COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia

MARCUS C. HOLMAN, SOMETIMES KNOWN AS
 MARCUS CLEOPHUS HOLMAN

                                                        OPINION BY
v.        Record No. 0629-22-2              JUDGE DANIEL E. ORTIZ
                                                        APRIL 18, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

Charles E. Haden for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Though narrow, the "ends of justice" exception to the contemporaneous objection rule

should negate a conviction for use of a firearm in the commission of a malicious wounding when

the trial court affirmatively found an absence of malice. Here, the King William County Circuit

Court held a bench trial and convicted Marcus Holman of unlawful wounding and use of a firearm

in the commission of a felony, in violation of Code §§ 18.2-51 and -53.1,[1] after Holman discharged

a shotgun and permanently injured his girlfriend, Selena Spurlock. Holman was indicted on

aggravated malicious wounding, but the trial court granted his motion to strike and proceeded on the

lesser-included unlawful wounding. On appeal, Holman argues that the evidence did not support

his convictions for unlawful wounding or use of a firearm in the commission of a felony. After

reviewing the evidence, the record supports Holman's conviction for unlawful wounding but does

---

[1] Holman was also convicted of discharging a firearm in public and possession of a firearm by a felon, in violation of Code §§ 18.2-280 and -308.2, but he does not challenge these convictions.

not support his conviction for use of a firearm in the commission of a felony. We affirm in part and reverse in part.

## BACKGROUND

Marcus Holman was the domestic partner of Selena Spurlock. He was a hunter and owned a shotgun. In the morning of November 14, 2020, Holman went hunting. When it became late, Spurlock called to ask what time Holman would come home, which escalated into a "big argument." She went to Holman's mother's house to retrieve her license plates and cell phone, because she believed that Holman was drinking and did not want him to drive with her plates. When she arrived, the couple began fighting. Spurlock testified that Holman yelled, took a license plate off the truck, and "hit [her] in the face with it." Spurlock then hit Holman in the back of the neck, causing him to fall. She then went home.

Three hours later, Spurlock was upstairs when her security camera notified her that someone was approaching the house. From her bedroom window, she observed Holman "pull in, sit there for a minute," and then back out as if he were leaving. He backed into another vehicle, exited the truck, and tried to enter the house. He could not enter because he did not have a key. Spurlock then contacted Holman's sister, Nikki, and asked her to get Holman. Nikki arrived twenty minutes later with her boyfriend, Shawn. Spurlock went to the second-floor bathroom and opened the window to look outside. When Holman saw his sister and Shawn, he jumped out of his truck and started yelling, while holding his shotgun. Through the open bathroom window, Spurlock told Holman to give the gun to his sister and that she was calling the police. Holman pointed the shotgun at Spurlock and told her to "come outside. You wanna hide behind the window, come outside."

Nikki and Shawn tried to take the shotgun, but Holman would not let go. Spurlock dialed the non-emergency police line and placed her cell phone on the windowsill so that Holman could hear the call. He continued to yell and curse at Spurlock and told her that if the police arrived there

would be "a shootout." She testified that he was angry, "pissed," frustrated, "really, really drunk," and acting erratically. As Spurlock spoke to the police, Holman pointed the gun toward the window where Spurlock was standing and fired. One shotgun pellet struck the side of the house, to the left of the window, and another struck the windowpane. Spurlock was hit in the face. She suffered a broken nose, shattered sinuses, and permanent blindness and remained in the hospital for two weeks. Holman fled the scene.

Although Holman admitted to police that he fired the shotgun twice, he stated that he fired it into the air because he was frustrated. Captain Hamm, a responding officer, interviewed Holman after the shooting. He testified that Holman told him at least twice that the shooting was not intentional and that "he did not take aim at the window." He also testified that Holman began crying when he was told the extent of Spurlock's injuries.

After the Commonwealth rested, Holman moved to strike the evidence, arguing that it failed to prove the requisite elements of malice and intent to maim, disfigure, disable, or kill necessary to sustain a conviction for aggravated malicious wounding. Holman argued that, at best, the Commonwealth's evidence rose to the level of "unlawful wounding." The trial court denied the motion to strike at that time.

Holman then testified that he did not intend to shoot or injure Spurlock but, rather, that he fired the shotgun because he was frustrated and humiliated. Although he admitted to arguing with Spurlock at his mother's house, he denied hitting her with a license plate. He stated that when he could not get into the house, he planned to sleep in the truck. But he was upset when Nikki arrived and felt frustrated and humiliated that Spurlock called her. Holman admitted that he exited the truck and told Nikki and Shawn that he was tired of needing to leave every time Spurlock got mad. He testified that he could hear Spurlock yelling "leave" but told Nikki that he was not going anywhere. He also testified that he knew Spurlock was at one of the windows but did not know which one. He

denied that he threatened a shootout and stated that he was not angry enough to hurt Spurlock. Finally, he claimed that after Nikki and Shawn left, he shot the gun twice in the air. He denied aiming it at the house and testified that he did not know Spurlock was hurt when he left.

Shawn testified that Holman was sleeping in his truck when he and Nikki arrived. Nikki woke Holman and told him to go with them. Although Shawn did not smell alcohol, Holman appeared to have been drinking. Nikki and Holman argued, as Holman did not want to leave without his belongings. He appeared upset and stated that he was "tired of this." As the argument escalated, Shawn heard Spurlock say that they needed to leave before she called the police. Although Shawn could not see Spurlock, it sounded like she was upstairs. Shawn testified that he did not see Holman with a shotgun and that there was no struggle. He stated that he did not hear Holman threaten a shootout. Finally, Shawn testified Holman became emotional when he learned that Spurlock was injured.

After the defense rested, Holman renewed his motion to strike. He argued that the evidence failed to prove the specific intent necessary for malicious wounding and the element of malice, arguing that Holman acted in "the heat of passion." Although Holman acknowledged that use of a gun "creates a presumption of malice," he emphasized that every witness stated that he was "angry, upset, frustrated, pissed off," and drunk, especially Spurlock, the victim. Holman also emphasized that he did not know where Spurlock was inside the house and that he consistently stated that he did not intend to shoot at the house or at Spurlock. The court granted the renewed motion to strike. It stated:

> I have considered the argument[s] . . . [and] the evidence that was before me. I have looked at these cases that y'all presented. And at this stage of the game, the presumption is not with the Commonwealth. And based on the testimony from the victim and the other evidence that was presented, I'm gonna grant the motion to strike on aggravated malicious wounding. I think we can go forward on unlawful wounding.

Through counsel, Holman immediately informed the trial court that he would plead guilty to unlawful wounding. He also stipulated that the evidence was sufficient to show guilt on the weapons offenses. The court accepted Holman's guilty plea to unlawful wounding and stated: "All right. I'll find then on the other charges he entered—he stipulated to those, even though he entered not guilty pleas." Holman's counsel responded, "Yes, sir." The court then found Holman guilty of all four counts:

> On the unlawful wounding, based on your plea of guilty that I have before me, I find you guilty of the unlawful wounding. On the use of a firearm in commission of a felony, you stipulated to that, I find you guilty of that. On the discharge of a firearm in a public place, you stipulated to that, I find you guilty of that. On possession of a firearm by a felon, you have stipulated to that, so I find you guilty of that.

Following sentencing, Holman filed a *pro se* motion to reconsider his conviction for use of a firearm in the commission of a felony. He asserted that the trial court erred, as unlawful wounding is not a predicate offense of Code § 18.2-53.1. No hearing was scheduled, and the trial court did not rule on Holman's *pro se* motion. This appeal followed.

STANDARD OF REVIEW

"On appeal, 'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Barnett v. Commonwealth*, 73 Va. App. 111, 115 (2021) (quoting *Smith v. Commonwealth*, 66 Va. App. 382, 384 (2016)). We also discard any evidence "in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)).

"We review questions of law, and mixed questions of law and fact, utilizing a de novo standard of review." *Dunaway v. Commonwealth*, 52 Va. App. 281, 299 (2008) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). When reviewing the sufficiency of the

evidence, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." *Id.* (quoting *Gilbert v. Commonwealth*, 47 Va. App. 266, 270 (2005)). And "[w]e will affirm the conviction 'unless it is plainly wrong or without evidence to support it.'" *Id.* (quoting *Shackleford v. Commonwealth*, 262 Va. 196, 209 (2001)). "The issue of whether a defendant has waived his right of appeal in connection with a plea proceeding 'is a matter of law'" and is reviewed de novo. *Delp v. Commonwealth*, 72 Va. App. 227, 235 (2020) (quoting *United States v. Manigan*, 592 F.3d 621, 626 (4th Cir. 2010)). "[T]he interpretation of Rule 5A:18 requires de novo review." *Brown v. Commonwealth*, 279 Va. 210, 217 (2010).

## ANALYSIS

Holman argues that the evidence did not support his convictions for unlawful wounding and use of a firearm in the commission of a felony. Specifically, he argues (1) that the evidence failed to prove he had the requisite intent for unlawful wounding and (2) that his conviction for use of a firearm in the commission of a felony cannot stand because unlawful wounding is not a predicate offense of Code § 18.2-53.1. Additionally, he argues that the ends of justice exception to Rule 5A:18 should apply. The Commonwealth argues that Holman waived his right to appeal and that the approbate/reprobate doctrine precludes our consideration of this appeal.

We do not decide whether Holman waived his right to appeal or whether the approbate/ reprobate doctrine precludes our hearing of Holman's first assignment of error,[2] as the evidence shows that Holman possessed the requisite intent for unlawful wounding. We also do not decide

---

[2] We do not reach these matters, as the doctrine of judicial restraint requires us to "decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)); *see also Spruill v. Garcia*, 298 Va. 120, 127 (2019).

whether Holman waived his right to appeal his second assignment of error, as the ends of justice exception applies to Holman's conviction for use of a firearm in the commission of a felony. Finally, we find that the approbate/reprobate doctrine does not bar the application of the "ends of justice" exception to Holman's conviction for use of a firearm in the commission of a felony.

### a. The trial court did not err in convicting Holman of unlawful wounding, based on the evidence and Holman's guilty plea.

"Intent and malice are two separate elements of the offense" of malicious wounding. *Williams v. Commonwealth*, 64 Va. App. 240, 253 n.3 (2015). Although "[b]oth malicious wounding and unlawful wounding require 'the intent to maim, disfigure, disable, or kill,'" malicious wounding also requires that this act be done with malice. *Id.*; Code § 18.2-51. Unlawful wounding only requires that the act be done unlawfully. Code § 18.2-51.

Here, the undisputed evidence showed that Holman drunkenly and erratically discharged a shotgun in the direction of Spurlock and her home. Fact finders may "infer that every person intends the natural, probable consequences of his or her actions." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011)). Holman does not contest that his actions caused Spurlock permanent injury. Additionally, Holman pleaded guilty to the unlawful wounding charge. Although the trial court failed to conduct a plea colloquy,[3] Holman does not raise any deficiencies in this guilty plea on appeal. Considering all the evidence together

---

[3] Under the Virginia Constitution, "the Commonwealth must accept any guilty plea tendered before a jury has rendered its verdict, so long as the plea is entered 'knowingly, voluntarily, and intelligently.'" *Hill v. Commonwealth*, 47 Va. App. 667, 671 (2006). A plea is knowingly, voluntarily, and intelligently given "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Id.* at 673 (quoting *Terry v. Commonwealth*, 30 Va. App. 192, 196-97 (1999)). "[T]o withstand scrutiny on appeal, the record must contain an 'affirmative showing' that the guilty plea was entered voluntarily and intelligently." *Id.* at 674 (quoting *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Generally, trial courts present a criminal defendant with a standard set of questions in a plea colloquy. *See id.* Here, the trial court did not ask Holman any questions about his guilty plea, and it did not admonish Holman about the relinquishment of his rights. Holman does not raise this issue on appeal.

with Holman's guilty plea to the unlawful wounding charge, the trial court did not err in convicting Holman of unlawful wounding, as there was sufficient evidence to show his guilt.

b. *The trial court erred in convicting Holman of use of a firearm in the commission of a felony, as the evidence affirmatively shows that an element of the offense did not occur.*

i. The ends of justice exception to Rule 5A:18 applies to Holman's conviction for use of a firearm in the commission of a felony.

Under Rule 5A:18, no trial court's ruling will be "a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Appellants generally waive their right to appeal if they do not specifically and timely state their objections. *See Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Id.* On appeal, we may consider issues not raised below only if they fall into an exception to Rule 5A:18. *Merritt v. Commonwealth*, 69 Va. App. 452, 459-60 (2018). The first exception, good cause, may be invoked only when "an appellant did not have the opportunity to object to a ruling in the trial court." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011). The second exception, the ends of justice, "is narrow," should "be used sparingly," and applies "only in the extraordinary situation where a miscarriage of justice has occurred." *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (*en banc*)).

Holman raised no timely objection to his conviction for use of a firearm in the commission of a felony. Holman arguably moved for reconsideration on this conviction in a *pro se* motion, while still represented by counsel. This motion was never ruled upon by the trial court within twenty-one days of entry of the final sentencing order. As such, Holman's objection to his conviction for use of a firearm in the commission of a felony was not preserved on appeal. *See*

*Juniper v. Commonwealth*, 271 Va. 362, 383 (2006); *Schwartz v. Commonwealth*, 41 Va. App. 61, 71 (2003), *aff'd*, 267 Va. 751 (2004).

Thus, we turn to the exceptions to Rule 5A:18. The good cause exception does not apply, as the record establishes that Holman had the opportunity to object to the sufficiency of the evidence for his convictions and failed to do so.[4] We then turn to the ends of justice exception and find that it applies to this matter.

Under the "ends of justice" exception, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Conley*, 74 Va. App. at 683 (quoting *Holt*, 66 Va. App. at 210). To show a miscarriage of justice, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must *affirmatively* prove that an element of the offense did not occur." *Holt*, 66 Va. App. at 210 (emphasis added) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 222 (1997)); *see also Ali v. Commonwealth*, 280 Va. 665, 670-71 (2010) (holding that the ends of justice exception applies when the defendant was convicted of larceny, but the evidence failed to show asportation—a necessary element—and the defendant affirmatively proved that no asportation occurred).

To fall under the "ends of justice" exception, we must therefore determine "whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Holt*, 66 Va. App. at 210 (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 695 (2011)). There is a "distinction between lack of proof of an element and affirmative proof that the element did not occur." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 75 (2015). "[L]ack of proof is not affirmative evidence to the contrary, which would warrant exercising the 'ends of justice' exception to Rule

_____

[4] Specifically, Holman stipulated that the evidence was sufficient to show use of a firearm in the commission of a felony and did not object to his unlawful wounding conviction.

- 9 -

5A:18." *Id.* at 75-76. "Where the record does not affirmatively establish error, we cannot invoke the ends of justice exception . . . ." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

Here, the relevant elements of use of a firearm in the commission of a felony are: (1) using any firearm (2) "while committing or attempting to commit . . . malicious wounding as defined in § 18.2-51 . . . [or] aggravated malicious wounding as defined in § 18.2-51.2." Code § 18.2-53.1. This code section does not include "unlawful wounding" as a predicate offense, only malicious wounding. As stated above, "malice" is a necessary element of malicious wounding. *Williams*, 64 Va. App. at 253 n.3; Code § 18.2-51. "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Perkins*, 295 Va. at 329 (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)); *see also* 7 Ronald J. Bacigal, *Virginia Practice Series: Criminal Offenses and Defenses* 47-48 (2017-2018 ed.).

Here, Holman has proved that the ends of justice exception applies. All witnesses, including Spurlock, testified that Holman was angry, upset, frustrated, "pissed," and "really, really drunk." Holman's testimony did not change, and the police corroborated his testimony and state of mind. More importantly, the trial court affirmatively found that Holman did not act with malice when it granted the renewed motion to strike the aggravated malicious wounding charge and proceeded only on the lesser-included unlawful wounding, which contains no element of malice.[5] As such, the record affirmatively shows that a malicious wounding—a necessary element of Code § 18.2-53.1—did not exist. The evidence, coupled with the trial court's granting of the motion to strike, affirmatively shows that Holman acted without malice. Thus, Holman's conviction for use of a firearm in the commission of a felony cannot stand.

---

[5] Because the trial court proceeded on the lesser-included unlawful wounding charge, we cannot say that the trial court affirmatively found that Holman lacked the requisite intent for malicious or unlawful wounding under the "ends of justice" exception. The trial court only affirmatively found that Holman acted without *malice*.

ii. The approbate/reprobate doctrine does not bar application of the "ends of justice" exception to Holman's conviction for use of a firearm in the commission of a felony.

Under the approbate/reprobate doctrine, "where an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error." *Saunders v. Commonwealth*, 211 Va. 399, 401 (1970). In *Saunders*, the Supreme Court held that a defendant who objects to the admission of past crimes—but independently testifies about those crimes—cannot raise this issue on appeal under the approbate/reprobate and invited error doctrines. *Id.* Similarly, in *Manns v. Commonwealth*, 13 Va. App. 677, 679 (1992), we held that when a defendant specifically requests a reduced charge, and the evidence supports that reduced charge, that defendant may not then appeal the sufficiency of the evidence. We have also held that these doctrines bar a defendant from offering specific jury instructions but then appealing the language of those instructions. *McBride v. Commonwealth*, 44 Va. App. 526, 529-31 (2004). Because the purpose of the approbate/reprobate doctrine is to prevent a defendant from "'tak[ing] advantage of the situation created by his own wrong,'" the ends of justice exception does not apply when a defendant "invite[s] the error of which he complain[s]." *Rowe v. Commonwealth*, 277 Va. 495, 502-03 (2009) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)).

Although the approbate/reprobate and invited error doctrines apply when a defendant concedes the law *and* the concession is appropriate, *see Manns*, 13 Va. App. at 679, these doctrines do *not* apply to mere concessions of law alone.[6] "[W]e are not bound by concessions of law by the parties." *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 419 (2013) (quoting *Epps v. Commonwealth*, 47 Va. App. 687, 703 (2006) (*en banc*)). Courts have an obligation to

---

[6] And the approbate/reprobate doctrine cannot apply when a defendant does not even stipulate to the facts necessary to find him guilty.

independently review concessions of law. *Merritt*, 69 Va. App. at 462; *Logan v. Commonwealth*, 47 Va. App. 168, 172 (2005) (*en banc*) ("Because the law applies to all alike, it cannot be subordinated to the private opinions of litigants. . . . 'A party can concede the facts but cannot concede the law.'" (quoting *Cofield v. Nuckles*, 239 Va. 186, 194 (1990))).

Additionally, unlike concessions of law, guilty pleas are strictly governed by our Constitution. Guilty pleas must be "knowingly, voluntarily, and intelligently" given; to "withstand scrutiny on appeal, the record must contain an 'affirmative showing' that the guilty plea was entered voluntarily and intelligently." *Hill v. Commonwealth*, 47 Va. App. 667, 671, 674 (2006) (quoting *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)); Va. Const. art. I, § 8. Generally, this occurs in the form of a plea colloquy.

Here, although Holman stipulated to certain facts at the outset of the case, he did not stipulate that all elements of the use of a firearm in the commission of a felony were present. Instead, Holman stipulated only to the fact that: he was a felon, he had a firearm, he discharged the firearm, and Spurlock was injured as a result. In fact, Holman expressly *disputed* the crime of malicious wounding—a necessary element of use of a firearm in the commission of a felony—stating: "What we have is a case in which we have stipulated to the vast majority of the evidence, but what we've *not* stipulated to is the necessary specific intent which is required in aggravated malicious wounding or a malicious wounding charge." (Emphasis added).

Because Holman's factual stipulations were not sufficient for the trial court to convict Holman of use of a firearm in the commission of a felony, the approbate/reprobate and invited error doctrines cannot bar Holman's assignment of error in this case. Holman neither took "'advantage of the situation created by his own wrong,'" nor "invited the error of which he complain[s]," as Holman did not stipulate that all of the factual elements of his conviction were present. *See Rowe*, 277 Va. at 502-03 (quoting *Cangiano*, 271 Va. at 181). In other words, to

- 12 -

find Holman guilty, the trial court had to independently find that a malicious wounding occurred. It did not do so. Moreover, these stipulations certainly cannot constitute a guilty plea. Guilty pleas are strictly governed by our Constitution, and Holman did not stipulate to all facts necessary to support this conviction.

Finally, Holman's stipulations were concessions of fact. But, to the extent that the Commonwealth argues that Holman stipulated to the crime of use of a firearm in the commission of a felony, we note that such a stipulation would amount to a mere concession of law, and an impossible concession of law, at that. After striking the malicious wounding and affirmatively finding that no malice occurred, the trial court stated: "All right. I'll find then on the other charges he entered—he stipulated to those, even though he entered not guilty pleas." Holman's counsel agreed. In other words, the trial court asked Holman's counsel to concede a legal impossibility. Here, use of a firearm in the commission of a felony required a finding of malicious wounding. The trial court had already affirmatively found that no malice occurred.

A stipulation that the law obligates a specific outcome or that a specific sentence is reasonable are concessions of law. *Merritt*, 69 Va. App. at 461-62 ("[W]e are not bound by the Commonwealth's assertion that the ends of justice exception applies in this case."); *Batts v. Commonwealth*, 30 Va. App. 1, 11 (1999) ("[H]is agreement cannot confer the power to impose a sentence greater than that established by the legislature."). Similarly, a blanket stipulation that all elements of an offense occurred, without more, is a concession of law. *See, e.g.*, *Cofield*, 239 Va. at 194 (finding that a defendant's statement that "he was 'not supposed to be' driving in the curb lane" constituted a concession of law and that the plaintiff did not prove a necessary element of negligence—that the defendant was actually prohibited from traveling in that lane). Courts may obviously accept a party's concessions of law; however, they have an "obligation" to independently review such concessions. *Merritt*, 69 Va. App. at 462.

And, as stated above, a concession of law alone cannot constitute a guilty plea, as guilty pleas are strictly governed by our Constitution and must be entered "knowingly, voluntarily, and intelligently." *Hill*, 47 Va. App. at 671, 674. For these reasons, even if Holman's stipulations amounted to a concession of law, the approbate/reprobate doctrine does not bar our hearing of this assignment of error; any alleged concession of law constituted a legal impossibility which the trial court was bound to independently review. *See Cofield*, 239 Va. at 194.

Because Holman did not stipulate that all the facts of use of a firearm in the commission of a felony occurred, the approbate/reprobate and invited error doctrines cannot bar Holman's appeal or our application of the "ends of justice" exception to his conviction. Holman neither invited the error nor pleaded guilty to this charge. Instead, he expressly disputed that a malicious wounding—a necessary element—occurred.

## CONCLUSION

For these reasons, we affirm the trial court's conviction of Holman for unlawful wounding. We reverse the trial court's conviction of Holman for use of a firearm in the commission of a felony, as the record affirmatively shows that an element of that offense did not occur, and we vacate this portion of Holman's sentence.

*Affirmed in part, reversed and vacated in part.*